**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| HENRY BATES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:17-cv-02817-TLP-tmp |
| v. | ) | |
| | ) | |
| DARREN SETTLES, BCCX Warden, and | ) | |
| SHAWN PHILLIPS, Warden, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DISMISSING § 2254 PETITION,**
**ORDER DENYING CERTIFICATE OF APPEALABILITY,**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND**
**ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Henry Bates[1] petitions for habeas corpus relief under 28 U.S.C. § 2254.  (ECF No. 1.)  In early 2018, Respondent filed the state court record and answered the petition.  (ECF Nos. 13 &15.)  Bates replied a few days later.  (ECF No. 16.)

The issues Petitioner raises in the habeas petition fall into two categories: (1) whether the procedural default doctrine bars the claims, and (2) whether the state court identified and applied the correct federal legal principles.  For the reasons below, the Court **DISMISSES** the petition.

**STATE COURT PROCEDURAL HISTORY**

At the end of his trial, a jury convicted Petitioner of aggravated robbery, burglary of a building, and vandalism of $1,000 or more in Shelby County Criminal Court.  (ECF No. 13-1 at

---

[1] Tennessee has custody of Petitioner and is housing him at the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee.  The State has assigned him prisoner number 133460.

PageID 109.)  The trial court sentenced Petitioner to an effective sentence of forty-two years in prison.  (ECF No. 13-1 at PageID 133–35.)  Petitioner appealed, and the Tennessee Court of Criminal Appeals ("TCCA") affirmed his convictions and sentence.  *State v. Bates*, No. W2012-02718-CCA-R3-CD, 2014 WL 823402 (Tenn. Crim. App. Feb. 28, 2014), *perm. app. denied* (Tenn. June 24, 2014.)

Petitioner petitioned pro se in Shelby County Criminal Court under the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101–122.  (ECF No. 13-16 at PageID 935–46.)  In early 2015, Petitioner's appointed counsel amended that petition.  (*Id.* at PageID 951–53.)  The post-conviction court conducted an evidentiary hearing and denied relief in an order entered about a year later.  (*Id.* at PageID 955.)  Bates appealed.  (*Id.* at PageID 956.)  The TCCA affirmed.  *Bates v. State*, No. W2016-00571-CCA-R3-PC, 2017 WL 2192087 (Tenn. Crim. App. May 17, 2017), *perm. app. denied* (Tenn. Aug. 18, 2017).

The TCCA opinion on direct appeal summarized the evidence presented at trial:

On July 29, 2009, Derrick Hubbert was working at a Mapco Express in Memphis.  His shift was from 10:00 p.m. to 6:00 a.m.  At 10:00 p.m., he locked the doors to the store, but he helped customers through a service window.  At some point after midnight, H[ub]bert looked out of the front window and saw a white pick-up truck pull into the parking lot and begin backing up toward the store in an accelerated manner.  Hubbert set off the silent alarm system.  The pick-up truck crashed into the front window of the store.  The impact shook the building and shattered the glass of the windows of the front of the building.  It also dislodged the drink machine and the ATM.

Two to three men jumped out of the truck and ran inside the store.  Hubbert remembered what two of the men were wearing.  One man wore a gold or tan shirt with a ski mask over his face.  The other man wore a black shirt and pantyhose over his head.  Hubbert testified that the pantyhose over the man's face was loose and did not disguise his appearance.

When they ran into the store, one of the men yelled "Don't move, you won't get shot."  They told Hubbert this twice.  Hubbert said that he saw the outline of a gun sticking out of the pants of the man wearing the gold shirt.  The gun was covered by the man's shirt.  Hubbert stared at the outline of the gun for most of the

2

time that the men were in the store.  The men grabbed the store's ATM machine and put it in the truck.  The men left with the ATM machine.

Officers with the Memphis Police Department arrived shortly thereafter. Officer Marcus Everett stated that Hubbert was "a nervous wreck."  He stated that there was severe damage to the front of the store.  Officer Everett watched the surveillance tape and saw three men enter the store after the truck rammed the building.  Officer Everett sent out an alert to search for the perpetrators.  Officer Lee Walker was also at the scene.  He left the store and went to the apartment complex next door.  He searched the parking lot and found a heavily-damaged, older-model, white Ford pick-up truck with glass and concrete debris in its bed.

Detective Steven Lovelace, a detective with the Germantown Police, also investigated the case at hand.  He developed a suspect by the name of Martin Strong.  Strong had approached Deljuan Williams the night of the robbery and asked Williams if they could use Williams's brother's shop.  Williams met Strong and Appellant at the shop.  They were driving a black Ford Explorer.  A third man arrived in another vehicle.  The men proceeded to use a blowtorch to cut open an ATM machine and take the money.  They left the ATM in a field behind the shop. Detective Lovelace later arrested Strong and found $2,580 in twenty-dollar bills on his person.

Officers searched the field behind the shop.  They found pieces of an ATM that had been cut and burnt.  They also found a long-sleeved tan shirt, a short-sleeved "mustardy brown" shirt, a dark pair of black pants, and a long button-up black shirt.

As a result of their investigation, officers were able to produce some mug shots to show Hubbert.  Hubbert identified Appellant as the man who put the ATM in the bed of the truck.  Furthermore, Hubbert identified Appellant at trial as the man with the loose pantyhose over his face.  He stated that because the pantyhose was loose it shifted, and he was able to identify him.

A jury convicted Appellant of all charges.  The trial court sentenced Appellant to thirty years for the aggravated robbery conviction and twelve years each for the burglary and vandalism.  One of the twelve-year sentences and the thirty-year sentence were ordered to be run consecutively to each other and concurrently with the remaining twelve-year sentence.  Appellant's effective sentence is forty-two years.

*State v. Bates*, 2014 WL 823402, at *1–*2.

As for the post-conviction hearing, the TCCA post-conviction opinion summarized the evidence presented at that hearing:

The following proof was adduced at the January 8, 2016 post-conviction hearing.  At the time of the hearing, Emma Jones had been romantically involved with the petitioner "on and off" over a twelve-year period.  She testified that she was with the petitioner on the night of July 29, 2009.  She said she remembered that night, five and a half years prior to the hearing, because it was her birthday. She stated

> We got together around 6:00 p.m., that evening, and we had went out.  And after we, you know, stayed out for a certain amount of time, he came over my house and he did stay all night until the next morning.

Jones, her sister, and the petitioner went to "Little Box" café, ate, danced, talked, had fun, and then went back to Jones's place around midnight.  She said the petitioner slept in her bed that night and was there the next morning.  Jones did not know the petitioner had been arrested for the instant offenses until two-weeks after her birthday.  She said his relatives told her about the charges.  She also testified that she was never contacted by trial counsel to testify at trial as an alibi witness.

The petitioner testified that he was innocent of the convictions in the instant case.  He claimed he told trial counsel that he was with Jones on the night of the offense, and trial counsel said he would contact her.  He recalled being with Jones on July 29, and said they went out to celebrate her birthday.  He denied being present at the Mapco, and stated that he "knew of" Deljuan Williams, but "didn't just know him."  He denied being present at Williams's auto shop where the ATM was taken after the robbery and cut open.  He said he gave Jones's name to trial counsel and that his defense hinged on her trial testimony.  As his trial date approached, the petitioner asked trial counsel about Jones, and trial counsel did not explain why she had not appeared.  Upon being asked by the post-conviction court if the petitioner told Jones to come and talk to trial counsel, the petitioner replied, "No, I never did."  Asked why, the petitioner replied, "I thought he would get in touch with her."

Trial counsel, an attorney with the Shelby County Public Defender's Office for over twenty years, testified that he was assigned the petitioner's case and investigated all of the information he was given.  He did not recall being advised about Jones as an alibi witness.  Significantly, trial counsel testified that "the clerk went into work the evening of the 28th around 10:00 I think.  And the truck smashed into the store sometime in the early morning hours like 2:00 or something of that nature."  Even if trial counsel had been given Jones's information, he did not believe her testimony would have made a difference in the petitioner's case because the police responded to the robbery at 2:45 a.m., or in the early morning hours on July 29.  Trial counsel's defense theory was twofold:  (1) he challenged the store clerk's identification of the petitioner because, in his view, the video showed the perpetrators face was obstructed; and (2) Deljuan Williams was committing a crime

4

> when he cut open the ATM and was attempting to save himself by casting blame on the petitioner.

*Bates v. State*, 2017 WL 2192087, at *1–*2 (footnote omitted).

## LEGAL STANDARDS

Federal courts may issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  But a federal court has limited authority and may grant that relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Before a federal court may consider a request for habeas relief by a state prisoner, it has to examine the state court record for specific information.

## I.   Exhaustion and Procedural Default

A federal court may not grant a writ of habeas corpus for a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The Petitioner must present the same claim for which it seeks redress in a federal habeas court to the state courts under 28 U.S.C. § 2254(b) and (c).  *Id.*  The petitioner must "fairly present"[2] each claim to all levels of state court review, including the state's highest court on discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Although, a petitioner need not present to all levels of state court if the state has explicitly disavowed state supreme court review as an available state remedy.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

---

[2] To exhaust each claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted).  Nor is it enough to make a general appeal to a broad constitutional guarantee.  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Tennessee has done that.  Indeed, Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court.  *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). Under Rule 39, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies.'" *Holland*, 330 F.3d at 402 (quoting Tenn. Sup. Ct. R. 39); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

There is also a procedural default doctrine much like the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  If the state court decides a claim on an independent and adequate state ground (such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim), the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review.  *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citation omitted)).[3]  In general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule."  *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

---

[3] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  *Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed."  *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60–61 (2009)).  "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Walker*, 562 U.S. 316 (quoting *Kindler*, 558 U.S. at 60–61.) (internal quotation marks and citations omitted).

If the procedural default doctrine bars a claim at the state level, the petitioner must show cause to excuse his failure to present the claim. *Schlup v. Delo*, 513 U.S. 298, 318–19 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). And he must show actual prejudice stemming from the constitutional violation or that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 320–21. For the latter, the petitioner must establish that a constitutional error has probably led to the conviction of a person who is innocent of the crime. *Id.* at 321; *see also House v. Bell*, 547 U.S. 518, 536–539 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

## II.   **Merits Review**

Under § 2254(d), where a state court decided a claim on the merits, a court should only grant a habeas petition if resolving the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1), the court has to limit its review to the record that the state court used to adjudicate the claim on the merits. *Cullen*, 563 U.S. at 181. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13

(2000).  A state court makes an "unreasonable application" of federal law when the it "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  So the state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue.  *Id.* at 409.  And the habeas court may not issue the writ just because, "in its independent judgment," it determines that the "state court decision applied clearly established federal law erroneously or incorrectly."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411) (internal quotations marks omitted).

There is little case law addressing whether, under § 2254(d)(2), a state court based a decision on "an unreasonable determination of the facts."  In *Wood v. Allen*, the Supreme Court noted that a state-court factual determination is not "unreasonable" only because the federal habeas court would have reached a different conclusion.[4]  558 U.S. 290, 301 (2010).  In *Rice v. Collins*, the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."  546 U.S. 333, 341–42 (2006).

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and has emphasized that, under § 2254(e)(1), the federal court presumes the state court's factual determination is correct absent clear and convincing evidence to the contrary.  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).  A federal court will not overturn a state

---

[4] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence."  *Wood*, 558 U.S. at 299.  The Court found it unnecessary to reach that issue and left it open "for another day."  *Id.* at 300–01, 304 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

court adjudication on factual grounds unless objectively unreasonable given the evidence presented during the state court proceeding. *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

## III.   Ineffective Assistance

The standards from *Strickland v. Washington* control a claim that ineffective assistance of counsel deprived a defendant of his Sixth Amendment right to counsel.  466 U.S. 668, 687 (1984).  To succeed on this claim, a movant has to show two elements: 1) that counsel's performance was deficient, and 2) "that the deficient performance prejudiced the defense."  *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of ineffective assistance applies a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance."  *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

To show prejudice, a petitioner has to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.[5]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  And "[i]t is not enough to show that the errors had some conceivable

---

[5] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel performed deficiently.  *Strickland*, 466 U.S. at 697.

effect on the outcome of the proceeding." *Id.* at 693.  Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating "*Strickland* does not require the State to rule out" a more favorable outcome to prevail, but "places the burden on the defendant, not the State, to show a reasonable probability that the result would have been different.") (internal quotation marks omitted).

A federal court's deference to a state-court decision under 28 U.S.C. § 2254(d) increases when reviewing an ineffective assistance claim.  According to the Supreme Court in *Harrington*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105 (internal citations and quotation marks omitted).

What is more, the Constitution does not guarantee the right to an attorney in state post-conviction proceedings.  *Coleman*, 501 U.S. at 752.  "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id*.  Attorney error cannot constitute "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted).  When the State has no constitutional obligation to ensure that a prisoner has competent counsel, the petitioner bears the risk of attorney error.  *Id.* at 754.

In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to the *Coleman* rule—"[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding."  566 U.S. 1, 17 (2012).  In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.*  The Supreme Court also emphasized that

> [t]he rule of *Coleman* governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 16.  The requirements that a petitioner must satisfy to excuse a procedural default under *Martinez* are

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (emphasis and alterations in original).

In *Martinez*, the Supreme Court considered an Arizona law that did not permit an inmate to assert ineffective assistance claims on direct appeal.  *Martinez*, 566 U.S. at 4.  In the Supreme Court's later decision in *Trevino*, the Court extended its holding in *Martinez* to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  569 U.S. at 429.  Thus, *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default.  Both *Martinez* and *Trevino* apply to Tennessee prisoners.  *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

11

## PETITIONER'S FEDERAL HABEAS CLAIMS

Petitioner brings these issues in his § 2254 petition

1.      The trial court's failure to grant a mistrial denied Petitioner the right to due process and the right to a fair trial (ECF No. 1 at PageID 5, 14–15);

2.      The evidence is insufficient to support Petitioner's conviction for aggravated robbery (*id.* at PageID 6, 16–17); and

3.      Trial counsel performed deficiently (*id.* at PageID 8, 18–20) by failing to:

   (a)      call Ms. Jones as an alibi witness (*id.* at PageID 21–22); and

   (b)      conduct an adequate investigation.  (*Id.* at PageID 23–24.)

The TCCA addressed Issues 1 and 2 in the direct appeal.  *State v. Bates*, 2014 WL 823402, at *2–*5.  And the TCCA addressed Issue 3(a) in the post-conviction appeal.  *Bates v. State*, 2017 WL 2192087, at *2–*3.  But Petitioner never presented Issue 3(b) to the TCCA.  The Court will now turn to its analysis of these claims.

## ANALYSIS OF PETITIONER'S CLAIMS

### I.      Issue 1

Petitioner contends that the trial court erred by denying his request for a mistrial after Germantown Police Detective Steven Lovelace testified.  (ECF No. 1 at PageID 14.)  Detective Lovelace testified, "based on what Mr. Strong told us, we recovered three of the ATM machines that evening,"[6] which Petitioner argues gave the jury the impression that he committed additional crimes.  (*Id.*)  Petitioner contends that the testimony violated Tenn. R. Evid. 404(b) as well as his rights to due process and to a fair trial.  (*Id.* at PageID 14–15.)  Respondent counters that Petitioner did not present the Tennessee courts with the federal claims raised in the § 2254

---

[6] (ECF No. 13-6 at PageID 568.)

petition and that the state law claim raised in the direct appeal provides no basis for relief here.

(ECF No. 15 at PageID 1093.)

The TCCA addressed the claim:

Appellant also argues that the trial court erred in denying his request for a mistrial when an officer stated that they recovered three ATM machines during the investigation based on information gathered from the co-defendant. The State disagrees.

In the case at hand, the following exchange occurred on direct examination of Detective Lovelace:

Q.    Now, you indicated that after you spoke with Mr. Strong, you released him that night?

A.    Yes, ma'am.

Q.    And you indicated that this person you knew as Mr. Deljuan Williams was with him when you first went to pick him up?

A.    That's correct.

Q.    Did you pick up and speak with Mr. Williams as well?

A.    We did.

. . . .

Q:    . . . Now, after you let him go, and then eventually let Mr. Strong go that night, what did you do next as regards to that investigation?

A.    Well, based on what Mr. Strong told us, we recovered three of the ATM machines that evening. Two were at a house off of Chelsea—

At this point, Appellant's trial counsel asked to approach the bench and moved for a mistrial. The trial court denied the motion and gave the following curative instruction to the jury:

All right, ladies and gentlemen, before you went out, Sergeant Lovelace mentioned something about some other ATM machines at a house.

You need to understand, ladies and gentlemen, [Appellant] is not charged with any other offenses.  He's not been arrested for any other offenses.  He was not even accused of any other offenses.  Okay?

We are trying this set of facts that we are here today.  Any reference to any other ATM machines relate only to Mr. Strong and they have no bearing whatsoever in this trial.  Does everybody understand that?

They don't have any bearing whatsoever and you're not to draw any inferences from that, you're not to speculate about that.

I'm telling you as a matter of law, based upon everything I know, [Appellant] was not charged, [Appellant] was not arrested, he was not even accused in any other incident.

This is the only incident we're concerned with.  Does everybody understand that?  Okay.

The purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred which would preclude an impartial verdict.  *See Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977).  The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.  *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (citing *State v. Hall*, 667 S.W.2d 507, 510 (Tenn. Crim. App. 1983)).  For this reason, an appellate court's review should provide considerable deference to the trial court's ruling in determining whether an occurrence or event at trial has so prejudiced the defendant or the State as to preclude a fair and impartial verdict.  *See State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

We conclude that the trial court did not abuse its discretion here.  The testimony in question was in reference to Appellant's co-defendant and referred to two ATM machines that were discovered at a different location that was behind Williams's brother's shop, where the ATM involved in Appellant's case was found.  The trial court took immediate steps to prevent undue prejudice to the defendant.  *See State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990) (holding that a mistrial was not required following a witness's outburst where the trial court took immediate action to dispel prejudice); *see also State v. Mathis*, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997) (holding that "[i]n light of the limited nature of the offending

testimony and the trial court's prompt curative instruction, the trial court did not abuse its discretion in refusing to grant a mistrial").

This issue is without merit.

*State v. Bates*, 2014 WL 823402, at \*4–\*5.

In a federal habeas petition under § 2254, a petitioner cannot bring claims that the state courts misapplied Tennessee case law and rules of evidence. *See* 28 U.S.C. § 2254(a) (A federal court may grant habeas relief to a state prisoner "only on the ground that he is currently in violation of the Constitution or laws or treaties of the United States."); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."); *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) ("A federal court cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law.'") (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). The TCCA did not address this claim as a violation of Petitioner's federal constitutional rights because he argued the trial court's actions violated Tennessee Rule of Evidence 404(b). *State v. Bates*, 2014 WL 823402, at \*4–\*5. What is more, Petitioner's brief on direct appeal relied only on Tennessee law and Tenn. R. Evid. 404(b). (ECF No. 13-10 at PageID 847–48.) In fact, he never argued how trial error implicated Petitioner's rights under the United States Constitution. (*Id.*)

Petitioner failed to exhaust this federal constitutional claim in state court. Because no avenue remains for exhausting this claim as a federal constitutional claim, he is then barred by procedural default from bringing this claim in federal court. Given that Petitioner seeks relief from the state courts' allegedly erroneous application of Tennessee case law and Tennessee evidentiary rules, he may not now bring his claim in federal court. The Court **DENIES** Issue 1.

## II.   <u>Issue 2</u>

Petitioner contends that a reasonably instructed jury would have lacked enough evidence

to find him guilty of aggravated robbery, because the facts failed to establish that the perpetrator

used a deadly weapon to accomplish the theft.  (ECF No. 1 at PageID 16–17.)  Respondent

counters that the TCCA applied the correct federal rule and that its decision was correct.  (ECF

No. 15 at PageID 1098–99.)

After reviewing the evidence presented at trial, the TCCA considered Petitioner's

argument:

> Appellant argues that the evidence was insufficient to support his conviction
> for aggravated robbery because "the facts do not establish that a deadly weapon
> was used to accomplish the theft.  The victim here never saw a deadly weapon."
> The State disagrees.
>
> To begin our analysis, we note that when a defendant challenges the
> sufficiency of the evidence, this Court is obliged to review that claim according to
> certain well-settled principles.  A verdict of guilty, rendered by a jury and
> "approved by the trial judge, accredits the testimony of the" State's witnesses and
> resolves all conflicts in the testimony in favor of the State.  *State v. Cazes*, 875
> S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).
> Thus, although the accused is originally deemed with a presumption of innocence,
> the verdict of guilty removes this presumption and replaces it with one of guilt.
> *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d
> 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the
> defendant to demonstrate the insufficiency of the convicting evidence.  *Id.*
>
> The relevant question the reviewing court must answer is whether any
> rational trier of fact could have found the accused guilty of every element of the
> offense beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*,
> 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  In making this
> decision, we are to accord the State "the strongest legitimate view of the evidence
> as well as all reasonable and legitimate inferences that may be drawn therefrom."
> *See Tuggle*, 639 S.W.2d at 914.  As such, this Court is precluded from re-weighing
> or reconsidering the evidence when evaluating the convicting proof.  *State v.
> Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805
> S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Moreover, we may not substitute our
> own "inferences for those drawn by the trier of fact from circumstantial evidence.
> *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the
> witnesses and the weight and value to be given to evidence, as well as all factual

issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 599, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

Appellant raises this issue in regard to his conviction for aggravated robbery. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39–13–401(a). A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39–13–402(a).

This Court has stated:

This court has affirmed convictions of aggravated robbery when the defendant's demand for money coupled with his maintaining a hand in his pocket, even when the hand was not positioned to evoke the image of a gun or any other weapon, led the victim to reasonably believe the defendant was armed, often by verbally threatening to harm the victim. *See*, *e.g.*, *State v. Aaron Cooper*, No. 01 C01–9708–CR–00368, slip op. at 7 (Tenn. Crim. App., Nashville, Sept. 29, 1998) (defendant "held his hand in the waistband of his pants 'as if he had a weapon,' and said . . . 'Don't make me have to hurt you'"); *State v. Frederick Corlew*, No. M2001–00842–CCA–R3–CD, slip op. at 4 (Tenn. Crim. App., Nashville, Nov. 1, 2002) (defendant kept "his right hand . . . in his right pants pocket as he came in and [it] remained there as he walked past the cash register and even after he came around the counter and was standing with the victim, demanding her to 'open the register'"). We have observed that the "common threads" in those cases where no actual deadly weapon was displayed "are: 1) a hand concealed in an article of clothing; and 2) a threat—express or implied—that caused the victim to 'reasonably believe' the offender had a deadly weapon and was not opposed to using it." *State v. Monoleto D. Green*, No. M2003–02774–CCA–R3–CD, slip op. at 10 (Tenn. Crim. App., Nashville, May 5, 2005).

*State v. Charles Clevenger*, No. E2013–00770–CCA–R3–CD, 2014 WL 107984, at \*4 (Tenn. Crim. App., at Jackson, Jan. 13, 2014).

In the case at hand, Hubbert testified that the men crashed into the store and twice said "Don't move, and you won't get shot."  Clearly, this is a verbal threat that would cause an individual to reasonably believe that the men had a gun.  Furthermore, Hubbert testified that he saw the outline of a gun under the shirt of one of the men.  As stated above, we have previously held that even a hand hidden by a shirt so that it looked like a gun is enough to support a conviction for aggravated robbery.

We conclude that the threat by the men coupled with the fact that Hubbert testified that he saw the outline of a gun under a shirt is enough for a rational trier of fact to determine that the men "display[ed] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon."  *See* T.C.A. § 39–13–402(a).

Therefore, this issue is without merit.

*State v. Bates*, 2014 WL 823402, at \*2–\*4.

This Court now considers the TCCA's decision.  In *Jackson v. Virginia*, the Supreme Court held,

in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt.

443 U.S.  307, 324 (1979).  This standard requires a federal district court to examine the evidence in the light most favorable to the State.  *Id.* at 326 ("[A] federal habeas corpus court faced with a record of conflicting facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

Petitioner contends that the victim never saw a deadly weapon.  And Petitioner argues that the victim offered speculative testimony stating, "something that appeared to be a gun under the shirt of one of the men who entered that store."  (ECF No. 1 at PageID 16.)  But under

Tennessee law, aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," accomplished with a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-401(a), 39-13-402(a)(1).  The State did not have to prove that the concealed object was a gun or that the defendant brandished a gun.  The State had only to prove that the actions of the perpetrators caused Hubbert to believe that there was a gun and that the perpetrators' actions frightened Hubbert.  Hubbert testified that he saw the handle of a gun "tucked in [a perpetrator's] pants."  (ECF No. 13-4 at PageID 346.)  Additionally, one of the perpetrators threatened Hubbert by telling him "[d]on't move, you won't get shot."  (*Id.* at PageID 345–46.)  Hubbert testified that he was a "nervous wreck", "crying, shaking."  (*Id.* at PageID 350.)  And with this, the jury chose to credit the testimony of the victim.  Petitioner has not met his burden of proving that the state court reached an objectively unreasonable resolution of this issue.

The TCCA applied the correct legal rule and cited both *Jackson v. Virginia* and state cases applying the *Jackson* standard.  *See State v. Bates*, 2014 WL 823402, at *2–*3.  The appellate court determined "the threat by the men coupled with the fact that Hubbert testified that he saw the outline of a gun under a shirt is enough for a rational trier of fact to determine that the men 'display[ed] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon.'"  *Id.* at *4.  Based on this Court's review of the transcript of Petitioner's trial (ECF Nos. 13-3, 13-4, 13-5, and 13-6), the TCCA correctly concluded that the testimony and evidence were more than sufficient to permit the jury to find Petitioner guilty of aggravated robbery.  And so, the Court **DENIES** Issue 2.

**III.**   <u>Issue 3a</u>

Petitioner Bates alleges that trial counsel provided ineffective assistance by failing to call Ms. Jones as an alibi witness.  (ECF No. 1 at PageID 8, 18–22.)  Respondent argues instead that the TCCA utilized the proper federal standard to analyze this claim and that it reached a reasonable decision.  (ECF No. 15 at PageID 1102–03.)

The TCCA identified the proper standard for analyzing the claim of ineffective assistance of counsel—*Strickland*, 466 U.S. at 687.  *Bates v. State*, 2017 WL 2192087, at *2.  After reviewing the post-conviction testimony and the postconviction court's decision, the TCCA opined:

> Here, the petitioner alleged that he told trial counsel that he had an alibi witness, Jones, before he went to trial.  At the post-conviction hearing, Jones testified that she was with the petitioner on the night of July 29 and into the early morning of July 30.  However, trial counsel testified that he was not advised of an alibi offense in this case.  Most importantly, trial counsel noted that even if he had been so advised, it would not have made a difference in the petitioner's case because the offense actually occurred on July 28, the day before Jones said she celebrated her birthday with the petitioner.  Trial counsel said the police responded to the robbery at 2:45 a.m., on the morning of July 29.  In its oral findings of fact, the post-conviction court determined that trial counsel was never made aware of Jones as an alibi witness. The court continued,

> > Because based upon his experience as a trial lawyer, which he's got quite a few years trial experience in front of this Court, knowing as I've pointed out the status of the identification and the State's case in this particular case, if he were aware of an alibi witness, I can't envision why he would not explore that or put that kind of a witness on or at least investigate it and then come in and say you know it didn't hold water.

> > The post-conviction court further accredited the testimony of trial counsel and determined that the testimony of Jones and the petitioner was unbelievable. The record does not preponderate against the findings of the post-conviction court. Accordingly, the petitioner has failed to establish deficient performance or prejudice to his case as a result. He is not entitled to relief.

*Bates v. State*, 2017 WL 2192087, at *3.

Petitioner contends that the post-conviction court and the TCCA "made an unsubstantiated determination that . . . petitioner did not tell [counsel] about the alibi witness prior to trial" and "based their decision . . . on this error of facts."  (ECF No. 1 at PageID 22.) But Petitioner misses the crux of the TCCA's decision—that the witness's testimony did not provide an alibi for the *time* of the crime.  The crime occurred between July 28 and July 29. Hubbert's shift began at 10:00 p.m. on July 28 and the robbery occurred at about 2:00 a.m. the morning of July 29.  (ECF No. 13-4 at PageID 337.)  Petitioner has not satisfied his burden of showing that the decision was objectively unreasonable.  Petitioner's misguided argument does not overcome the presumption of correctness this Court gives to the state court's factual determination.

Based on this Court's review of the transcript of Petitioner's post-conviction hearing (ECF No. 13-17) and the transcript of Petitioner's trial (ECF Nos. 13-3, 13-4, 13-5, and 13-6), the Court finds that the TCCA's determination was a reasonable application of *Strickland*.  The Court **DENIES** Issue 3a.

## IV.    Issue 3b

Petitioner contends that counsel performed deficiently by not conducting an "adequate investigation" that would have led to the discovery of his alibi witness.  (ECF No. 1 at PageID 8, 18–20, 23–26.)  Respondent replies that he did not raise this claim in the post-conviction appeal, and the procedural default doctrine bars this claim now.  (ECF No. 15 at PageID 1107.)  And the Court agrees.

Petitioner raised this claim in the amended post-conviction petition.  (ECF No. 13-16 at PageID 952.)  And Petitioner testified at the post-conviction hearing that he did not think that his attorney investigated his case.  (ECF No. 13-17 at PageID 983.)

But Petitioner did not raise this issue in the post-conviction appeal. And so, Petitioner has not properly exhausted the claim. The procedural default doctrine therefore bars the claim. Petitioner has no other avenue to present the claim, given the state statute of limitations on state post-conviction relief. This procedural default operates as a complete and independent procedural bar to federal habeas review of Issue 3b.

What is more, *Martinez* and *Trevino* cannot excuse Petitioner's default of Issue 3b. *Martinez* does not encompass claims that post-conviction appellate counsel performed ineffectively. *See Martinez*, 566 U.S. at 15 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial.") The procedural default of Issue 3b occurred when post-conviction counsel exercised her discretion to limit the brief to the TCCA to the strongest argument. Counsel has no duty to raise frivolous issues and may exercise her discretion to limit a brief to the strongest argument. Bates has not presented any evidence that requires review of Issue 3b to prevent a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U. S. 478, 495–96 (1986). Procedural default bars Issue 3b, and so the Court **DENIES** it.

In sum, the procedural default doctrine bars the issues that Petitioner raises, and so, they lack merit. The Court **DISMISSES** the petition **WITH PREJUDICE**. The Court will enter Judgment for Respondent.

## APPELLATE ISSUES

A Petitioner has no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). The Court has to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.

*See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must reveal the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)–(3).  A petitioner makes a "substantial showing" when he shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed even more).

The Petitioner also does not have to show that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same).  Even so, courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Here, there can be no question that procedural default bars the claims in this petition, and they lack merit.  Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

Here for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  The Court, therefore,

**CERTIFIES**, under Fed. R. App. P. 24(a), that any appeal here would not be taken in good faith, and the Court **DENIES** leave to appeal in forma pauperis.[7]

      **SO ORDERED**, this 2nd day of February, 2021.

                        s/Thomas L. Parker
                        THOMAS L. PARKER
                        UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis with a supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).